**IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | |
| | : | **NO. 04-66** |
| **SALVATORE DIAMBROSIO** | : | |

**MEMORANDUM**

**Kauffman, J.**                                                                **March 13, 2008**

On March 11, 2005, a jury convicted Defendant Salvatore DiAmbrosio of ten counts of

wire fraud.[1]  On June 8, 2005, this Court sentenced Defendant to five years of probation,

including a one-year term of home confinement, $2.1 million in restitution, and a $1,000 special

assessment.  The Government appealed, and on October 24, 2007, the Third Circuit vacated the

sentence and remanded for resentencing.  In compliance with the Third Circuit's directive, on

January 15, 2008, the Court held a resentencing hearing.[2]

**I.      Background**

The original sentencing hearing, held on June 8, 2005, lasted over three hours.  The Court

heard lengthy arguments from counsel for the Government and for Defendant regarding the

advisory Guidelines and relevant 18 U.S.C. § 3553(a) factors.[3]  The Government sought sentence

---

[1]      Defendant was found guilty of intentionally defrauding Binary Traders ("Binary"), an
options trading firm, of approximately $2.8 million in 1999.  Binary bought and sold stock through D&D
Securities, a company that trades on the floor of the Philadelphia Stock Exchange (PHLX).  Defendant
was employed by D&D as a stock execution clerk, and handled Binary's stock orders.  During this time,
Defendant also worked as a trader for Bearcat, another PHLX company.  Defendant was stationed on the
floor of the PHLX, where he took "buy and sell" orders from Binary's traders.

[2]      Prior to the hearing, the parties filed supplemental sentencing memoranda.

[3]      Indeed, the Court expressly noted:  "We are in the process of considering the 3553(a)
factors, and the question whether [letters submitted from family and friends] are relevant to the issue of

1

enhancements for obstruction of justice, abuse of trust/use of special skill, and affecting a

financial institution. This Court declined to apply the enhancements, and concluded that the

applicable offense level was 21.  On appeal, the Third Circuit determined that the Court erred in

refusing to impose the obstruction of justice enhancement.[4]   The Opinion directed the Court to

recalculate the applicable Sentencing Guidelines range, fully consider the sentencing factors set

forth in 18 U.S.C. § 3553(a), and specifically state the reasons that support the sentencing

determination in order to permit review for reasonableness.[5]

## II.     Legal Standard

In a recent decision, Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court

explicitly rejected the notion that a sentence outside the Guidelines range is presumptively

unreasonable, or that a departure from the Guidelines must be justified by "extraordinary"

---

rehabilitation and protection of the public, and some of the other factors of 3553(a)."  June 8, 2005
Hearing Transcript, at 51.

[4]        The Government did not appeal the Court's denial of the enhancements for abuse of
trust/use of special skill, and affecting a financial institution.

[5]        At no time during the June 8, 2005 hearing was it suggested by anyone that Defendant in
any way cooperated with the Government in the investigation and prosecution of others.  The transcript
of the over three-hour hearing is totally devoid of any such language.  A clerical error in the judgment
order did include (in brackets) a reference to the investigation and prosecution of others.  See October 25,
2007 Memorandum from Deputy Clerk to Judge Kauffman ("Upon review of the Judgement of Sentence
in the above-referenced matter, I noticed a clerical error in the 'Statement of Reasons' section of the
Judgment.  The bracketed section, which reads 'as well as his substantial cooperation with the
government in the investigation and prosecution of others' was included in error, and does not accurately
reflect your statements in court.").  Instead of alerting the Court to this obvious clerical error, the
Government chose to state in its appellate briefs "the Court entered the written judgment, which included
language stating that the sentence was imposed, in part, because DiAmbrosio cooperated with the
Government in the investigation and prosecution of others, which is not true."  App. Brief. at 7.  The
Government's characterization, which led the Third Circuit to conclude that this Court acted "in true
boilerplate fashion," misstates the Court's thorough process in imposing the sentence, as indisputably
reflected in the hearing transcript.  At no time during the sentencing process did the Court ever factor
into its sentencing consideration any non-existent cooperation of Defendant with the Government, and
the transcript of the June 8, 2005 hearing is unambiguously clear on this point.

circumstances:

> We reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range. Even the Government has acknowledged that such a presumption would not be consistent with <u>Booker</u>.

<u>Id.</u> at 595.

The <u>Gall</u> Court instructed that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. <u>Id.</u> at 596. Next, the court must give both parties "an opportunity to argue for whatever sentence they deem appropriate." <u>Id.</u> After hearing from the parties, the district judge must consider the § 3553(a) factors "to determine whether they support the sentence requested by a party." <u>Id.</u> The more significant the deviation from the Sentencing Guidelines, the more substantial the justification must be. <u>Id.</u> at 597 ("[W]e find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."). After determining the appropriate sentence, the district judge must adequately explain the chosen sentence to allow for meaningful appellate review. <u>Id.</u>

In another recent decision, <u>Kimbrough v. United States</u>, 128 S. Ct. 558 (2007), the Supreme Court held that the crack and powder cocaine ratio is advisory, and district courts are free to deviate from the cocaine Sentencing Guidelines. As the Court explained, "[a] district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." <u>Id.</u> at 564. The Court instructed

that "district courts must treat the Guidelines as the starting point and the initial benchmark," but recognized that the sentencing judge has "greater familiarity with the individual case and the individual defendant before him than the [sentencing] commission or the appeals court," and is therefore "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Id. at 574.

## III.    Discussion

## A.    Advisory Guidelines Range

The Government has withdrawn its request for enhancements on the basis of abuse of position of trust and affecting a financial institution.  The only enhancement requested at this time is a two-level upward adjustment for obstruction of justice.   In United States v. Dunnigan, 507 U.S. 87 (1993), the Supreme Court rejected a constitutional challenge to U.S.S.G. § 3C1.1, which provides, "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, [the court shall] increase the [defendant's] offense level by 2 levels."  See Dunnigan, 507 U.S. at 98; United States v. Williamson, 154 F.3d 504, 506 (3d Cir. 1998) (same).  The burden of proof applicable to the enhancement is preponderance of the evidence.   United States v. Kim, 27 F.3d 947, 961 (3d Cir. 1994).[6]

---

[6]     The Dunnigan Court recognized that not every defendant whose testimony is rejected by the jury will incur a perjury enhancement:

> A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony ... As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory.  In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense.  Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.

At trial, Defendant testified that the stock trades in question had been authorized by Dan Bigelow, president of Binary, and that therefore he had not defrauded the company.  Because the jury concluded that Defendant intentionally defrauded Binary, and because intent is a necessary element of the offense of which he was convicted, Defendant's testimony that the stock trades were authorized cannot be reconciled with the jury verdict.  See United States v. Boggi, 74 F.3d 470, 478-79 (3d Cir. 1996) (affirming the application of the perjury enhancement after concluding that "in convicting [the defendant], the jury necessarily rejected his testimony that he was innocent of the extortion offenses charged.  In sentencing [the defendant], the district court properly considered this fact and properly reasoned that a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict."); United States v. Gricco, 277 F.3d 339, 362 (3d Cir. 2002); United States v. Ortiz, 91 Fed. Appx. 224, 225-26 (3d Cir. 2004) (holding that the enhancement was appropriate because "[Defendant's] claim that his testimony was not perjurious is belied by the record, which indicates that, in convicting [Defendant], the jury necessarily rejected his testimony that he was not involved in the crime, and credited the testimony of three witnesses who testified to the contrary."); United States v. Freeman, 139 F. Supp. 2d 1364, 1373 (S.D. Fla. 2001) (explaining that a "guilty verdict requires the sentencing judge to accept facts necessarily implicit in the verdict").

Accordingly, a two-level obstruction of justice enhancement is mandatory pursuant to Dunnigan and Williamson.  See DiAmbrosio, No. 05-3317, Slip Op. at 5 (3d Cir. Oct. 24, 2007) (noting that a two-level enhancement for obstruction of justice is "specifically required by the

---

Dunnigan, 507 U.S. at 95.  None of the circumstances discussed by the Dunnigan Court are present in this case.

Guidelines"). With a criminal history category of **I** and an adjusted offense level of **23**, the advisory Sentencing Guidelines range applicable to this case is **46-57 months** of imprisonment.[7]

### B.    The § 3553(a) Factors

Section 3553(a) requires the Court to impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the criminal conduct, to protect the public, and to provide the defendant with needed educational and vocational training or other correctional treatment.

### 1.    The nature of the offense

Defendant was found guilty of intentionally defrauding Binary of approximately $2.8 million in 1999. The illegal conduct lasted from April to September 1999, and was completely non-violent. In mitigation of his offense, Defendant paid federal income taxes on his illicit gains, which significantly reduced his profits. See Presentence Report, Recommendation, at 1.

### 2.    Defendant's history and characteristics

The conduct for which Defendant was convicted represents a marked exception to an otherwise law-abiding life. Defendant had no prior criminal history. Moreover, his post-offense record has been virtually unblemished. See January 15, 2008 Hearing Transcript, at 31-34.[8]

---

[7]    Defendant acknowledges that the two-level enhancement is mandatory. See Defendant's Sentencing Memorandum (docket no. 68), at 5. The parties are in agreement as to the relevant advisory Sentencing Guidelines range.

[8]    On January 4, 2008, the Probation Officer, Christine Rennie, submitted a case update to the Court reporting on DiAmbrosio's compliance with the terms of his probation. She reported that DiAmbrosio completed his twelve-month term of home confinement without incident on July 17, 2006.

Defendant has strong family and community ties, as evidenced by the numerous letters submitted to the Court on his behalf from family, friends and colleagues, praising his character and devotion to his family.[9]  He is the father of three young children.  He shares custody of two of his children with his former wife, and is raising his third child with his current wife.  Defendant has a history of consistent employment and unwavering emotional and financial support of his family.  See January 15, 2008 Hearing Transcript, at 38-43.   Similarly, in a recent opinion, the Fourth Circuit upheld a thirty-six-month downward departure from the Sentencing Guidelines on the basis of such factors as devotion to family and profession, loss of teaching certificate and state pension, potential for rehabilitation, and a low chance of recidivism.  See United States v. Pauley, 511 F.3d 468 (4th Cir. 2007).

**3.      The need for the sentence imposed**

---

On August 10, 2006, it was discovered that DiAmbrosio had fallen behind in his restitution payments and applied for a credit card without the permission of the Probation Office.  Since that time, he has been in full compliance with the terms of probation, and the Probation Office is in the process of transferring his supervision to its Low Intensity Caseload, designed for offenders who are compliant and pose a minimal risk of recidivism.  See January 4, 2008 Case Update.

[9]      A few significant quotations: "Sal is someone I would trust my life with, and anyone who knows him would say the same thing.  Sal is a great family man whose three children worship and adore him."  "My son is a good man, a good father, and a good son."  "Family always comes first with him.  The love he has for his children is unbelievable.  The children love him so much and depend on him financially and for support and love ... Little Sal has ADHD and it was Sal that kept taking him back to the doctor until they could get him on the proper dosage of medicine ..."  The Court also received a letter from his former lawyers, C. Clark Hodgson and Patricia Casperson, of the firm of Stradley Ronon.  The letter stated, in relevant part: "Beginning with the SEC's investigation [DiAmbrosio] has experienced dramatic and life changing events in his personal life, including, of course, the loss of his job, loss of any opportunity to work in the securities industry, loss of friends, and a divorce ...  He is not a person for whom incarceration is either desirable or necessary.  Mr. DiAmbrosio is a devoted father and primary source of financial support for three young children.  He has certainly learned an extremely difficult and punishing lesson ..."  Another letter was received from Andrew Micklin, an attorney practicing in New Jersey, whose wife is DiAmbrosio's cousin.  The letter states, in relevant part: "when considering Sal's sentence I urge your Honor to consider all victims, including the innocent ones.  Sal's children are in need of their father more than words can describe."

7

Section 3553(a)(2) requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. It also requires the Court to fashion a sentence that affords adequate deterrence and protects the public from future crimes of the defendant. The Court is mindful of the seriousness of the offense and the substantial financial losses incurred by Binary as a result of Defendant's actions. However, having examined the individual characteristics of Defendant, the Court is persuaded that a sentence of incarceration would be greater than necessary to promote the purposes set forth in § 3553(a). Defendant already has paid a heavy price for his offense. He has lost his job, is forever barred from the securities industry, was fined $1 million by the Philadelphia Stock Exchange, and has a $2.1 million restitution obligation. In addition, Defendant was divorced and as a result, lost daily contact with two of his children, one of whom suffers from ADHD. See January 15, 2008 Hearing Transcript, at 38-40. There is no evidence that Defendant is violent or that he poses any danger to the community. See January 15, 2008 Hearing Transcript, at 45-46. A sentence of incarceration would have an exceptionally adverse effect on Defendant's family, and particularly his three young children, who are dependent on him.[10]

The Court affords substantial weight to Defendant's post-offense rehabilitation.[11]

---

[10] Moreover, under the circumstances, a sentence of incarceration would not promote respect for the law, but may accomplish the opposite result. See Gall, 128 S. Ct. at 599 ("[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.").

[11] Although certain offender characteristics are taken into account in the advisory guidelines range, "[i]f Booker means anything at all, it must mean that the court was permitted to give further weight to a factor covered by a specific guidelines adjustment, especially where ... that factor ... in some other way makes the case different from the ordinary case where the factor is present." United States v. Wachowiak, 496 F.3d 744, 753 (7th Cir. 2007).

Defendant's ability to remain crime-free for over eight years since the misconduct is a manifestation of his self-rehabilitation, and demonstrates both that he is unlikely to engage in future criminal activity and that he is not a danger to the public.  See Gall, 128 S. Ct. at 600 ("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative.  This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts."); see January 15, 2008 Hearing Transcript, at 45-46 ("THE COURT: I think you have established that other than the serious ... aberrational conduct during the period in 1999 when he was guilty of the acts which the jury found him guilty of, he has a clear record, and subsequent to ending that conduct, he had a completely clear record, which helps according to the language of Gall to establish that he has self-rehabilitated and that that helps to satisfy both the deterrence and the protection of the public considerations or factors of 3553(a).").

**4.      The kinds of sentences available**

Section 3553(a)(3) requires the Court to consider the kinds of sentences available, including non-incarcerative alternatives.  See Gall, 128 S. Ct. at 602 ("The Guidelines are only one of the factors to consider when imposing [a] sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment.").  In the instant case, a sentence of probation including a one-year term of home confinement with electronic monitoring and restitution in the amount of $2.1 million would provide just punishment for the offenses and is a viable alternative to imprisonment that would adequately achieve the goals of Section 3553(a).  As the Gall Court observed, a probationary sentence is "not granted out of a spirit of leniency:"

9

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  See United States v. Knights, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.").  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual "special conditions" imposed by the court.

Gall, 128 S. Ct. at 595-96 (citations omitted); see also January 15, 2008 Hearing Transcript, at 21. Having considered the types of sentences available, the Court is persuaded that a sentence of five years probation including a one-year term of home confinement with electronic monitoring and restitution in the amount of $2.1 million is sufficient, but not greater than necessary, to accomplish the goals of sentencing, including deterrence and protection of the public.  A probationary sentence would significantly limit Defendant's liberty and impose restrictions on his activities while allowing him to continue supporting his family and paying his substantial restitution obligation.

## 5.    The Need to Avoid Unwarranted Sentencing Disparities

The Government urges the Court to avoid a substantial departure from the advisory Guidelines, arguing that it would create unwarranted sentencing disparities.  The Court addressed a similar Government concern in Kimbrough.  While stressing that sentencing uniformity "remains an important goal of sentencing," the Court noted that "some departures from uniformity [are] a necessary cost of the remedy."  Kimbrough, 128 S. Ct. at 574.  Thus, while the imposition of a probationary sentence may result in a sentencing disparity, the Supreme Court has recognized this as an inevitable consequence of Booker.

10

**6.      The Need to Provide Restitution to Victims**

A non-incarcerative sentence will enable Defendant to continue making payments on his $2.1 million restitution obligation.  See January 15, 2008 Hearing Transcript, at 42.

**IV.      Conclusion**

For the foregoing reasons, the Court concludes that under the particular circumstances of this case, a sentence of five years probation including a one-year term of home confinement with electronic monitoring and a restitution obligation of $2.1 million would provide just punishment sufficient, but not greater than necessary, to reflect the seriousness of the offenses and to afford adequate deterrence, protection of the public and respect for the law.  The Court's previously-imposed Order regarding conditions of probation, restitution and special assessment shall remain in effect.  An appropriate judgment order will follow.

BY THE COURT:

_S/ BRUCE W. KAUFFMAN__
BRUCE W. KAUFFMAN, J.

11